**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Eric Goldstein, Matt Sudol, and Bonnie Zelazek, individually and as representatives of a class of similarly situated persons, and on behalf of the Mutual of America Life Insurance Company Savings Plan, | Case No. 1:22-cv-7862-GHW-OTW |
| Plaintiffs, | CLASS ACTION |
| v. | |
| Mutual of America Life Insurance Company, the Mutual of America Investment Manager Committee, and John and Jane Does 1-20, | |
| Defendants. | |

**Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

I.     THE PLEADINGS AND MOTIONS TO DISMISS ...............................................2

II.    DISCOVERY AND SETTLEMENT .................................................................3

III.   OVERVIEW OF SETTLEMENT TERMS ..........................................................4

       A.   The Settlement Class.................................................................4

       B.   Monetary Relief .......................................................................4

            a.   Recordkeeping Claim Entitlement Amount.................................5

            b.   Investment Claim Entitlement Amount ....................................5

       C.   Prospective Relief....................................................................6

       D.   Release of Claims ....................................................................7

       E.   Class Notice and Settlement Administration ..................................7

       F.   Attorneys' Fees and Administrative Expenses ...............................8

       G.   Review by Independent Fiduciary ...............................................8

ARGUMENT ................................................................................................................9

I.     STANDARD OF REVIEW ...........................................................................9

II.    THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL ..........10

       A.   The Class is Adequately Represented...........................................10

       B.   The Proposed Settlement was Negotiated at Arm's-Length .......................11

       C.   The Settlement Provides Significant Relief to Class Members that is Fair and Adequate Based on All Relevant Considerations ...................................13

            1.   The Costs, Risks, and Delay of Further Litigation were Significant....................14

            2.   The Proposed Method of Distributing Relief to the Class is Effective................. 16

3.  The Settlement Imposes a Reasonable Limitation on Attorneys' Fees .................16

4.  No Separate Agreements Bear on the Adequacy of Relief to the Class ...............16

5.  The Settlement Treats Class Members Equitably ..................................................16

III.  THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ...........................17

IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .....................18

A.  The Proposed Settlement Class Satisfies Rule 23(a) ..................................................18

1.  Numerosity ................................................................................................... 18

2.  Commonality ..................................................................................................19

3.  Typicality .......................................................................................................20

4.  Adequacy .......................................................................................................20

B.  The Proposed Class Satisfies Rule 23(b)(1) ...............................................................21

1.  Rule 23(b)(1)(A) ............................................................................................22

2.  Rule 23(b)(1)(B) ............................................................................................22

CONCLUSION .................................................................................................................................23

# **TABLE OF AUTHORITIES**

## **Cases**

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................................................................15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................................18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)..............................................................................................21

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  2019 WL 2428631 (S.D.N.Y. June 11, 2019) .................................................................23

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020) .............................................13

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ....................................................................13

*Brotherston v. Putnam Invs., LLC*,
  No. 1:15-cv-13825 -WGY, ECF No. 88 (D. Mass. Dec. 13, 2016)..................................23

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018).............................................................................................11

*Cassell v. Vanderbilt Univ.*,
  2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) ..............................................................23

*Cates v. The Trustees of Columbia University in the City of New York et al.*,
  No. 1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018) .........................................23

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).............................................................................................10

*Clark v. Duke Univ.*,
  2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .................................................................23

*Clark v. Ecolab Inc.*,
  2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)....................................................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)...............................................................................................19

*Cunningham v. Cornell Univ.*,
  No. 1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019) ...............................................23

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................20

*Henderson v. Emory Univ.*,
  2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) .................................................................23

*Hochstadt v. Boston Scientific Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ..........................................................................21, 23

*In re Beacon Assocs. Litig.*,
  282 F.R.D. 315 (S.D.N.Y. 2012) .....................................................................................23

*In re Excess Value Ins. Coverage Litig.*,
  2004 WL 1724980 (S.D.N.Y. July 30, 2004) ..................................................................12

*In re Global Crossing Secs. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................................21

*In re GSE Bonds Antitrust Litig.*,
  2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ..............................................................9, 10

*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000) .......................................................................................23

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................................................18

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .......................................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................................9

*In re Norte/Networks Corp. ERISA Litig.*,
  2009 WL 3294827 (M.D. Tenn. 2009) ............................................................................23

*In re Northrup Grumman Corp. ERISA Litig.*,
  2011WL 3505264 (C.D. Cal. Mar. 29, 2011) ..................................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .....................................................................................14

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)......................................................................9

*In re Tyco, Int'l, Ltd. Multidistrict Litig.*,
    2006 WL 2349338 (D.N.H. Aug. 15, 2006) .......................................23

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................20

*In re Virtus Invest. Partners, Inc. Sec. Litig.*,
    2017 WL 2062985 (S.D.N.Y. May 15, 2017) ...................................20

*In re Williams Co. ERISA Litig.*,
    231 F.R.D. 416 (N.D. Okla. 2005).....................................................23

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................20

*In re WorldCom, Inc. ERISA Litig.*,
    2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004) ......................................23

*In re WorldCom, Inc. ERISA Litig.*,
    2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ....................................14

*Johnson v. Fujitsu Tech. & Business of Am., Inc.*,
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ...................................13

*Jones v. NovaStar Fin., Inc.*,
    257 F.R.D. 181 (W.D. Mo. 2009) .......................................................23

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)........................................................23

*Karg v. Transamerica Corp.*,
    2020 WL 3400199 (N.D. Iowa March 25, 2020) .............................23

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021)....................................11

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
    2016 WL 6542707 (D. Conn. Nov. 3, 2016) .....................................12

*Koch v. Dwyer*,
    2001 WL 289972 (S.D.N.Y. March 23, 2001) ..................................23

*Koerner v. Copenhaver*,
   2014 WL 5544051 (C.D. Ill. Nov. 3, 2014)..................................................................15

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014).........................................................................21, 22, 23

*Krueger v. Ameriprise Fin., Inc.*,
   2015 WL 4246879 (D. Minn. July 13, 2015) ..................................................................15

*Kruger v. Novant Health, Inc.*,
   2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)................................................................15

*Lomeli v. Sec. & Inv. Co. Bahrain*,
   546 Fed. App'x 37 (2d Cir. 2013).......................................................................................17

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)..................................................................................................9

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ................................................................14

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y Sept. 5, 2017)........................................................... *passim*

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   No. 15 Civ. 9936 (LGS), ECF Nos. 321 (S.D.N.Y. Aug. 14, 2018) ...............................13

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   No. 15 Civ. 9936 (LGS), ECF No. 335 (S.D.N.Y. Oct. 9, 2018) .....................................4

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   No. 15 Civ. 9936 (LGS), ECF No. 348 (S.D.N.Y. Mar. 7, 2019) ...................................13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..............................................................................................................17

*Price v. Eaton Vance Corp.*,
   No. 18-12098, ECF No. 32 (D. Mass. May 6, 2019).......................................................13

*Price v. Eaton Vance Corp.*,
   No. 18-12098, ECF No. 57 (D. Mass. Sept. 24, 2019)....................................................13

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)................................................................................................19

*Rozo v. Principal Life Ins. Co.*,
    2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ..................................................14

*Sacerdote v. New York Univ.*,
    2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)....................................................23

*Sacerdote v. New York Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018).....................................................14, 15

*Shanehchian v. Macy's, Inc.*,
    2011 WL 883659 (S.D. Ohio Mar. 10, 2011)............................................22, 23

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ..................................................13

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156, 174 (E.D. Pa. 2009).............................................................23

*Stevens v. SEI Investments Co.*,
    No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019).....................23

*Tibble v. Edison Int'l*,
    2017 WL 3523737 C.D. Cal. Aug. 16, 2017) .................................................15

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, ECF No. 95 (D. Mass. Mar. 24, 2021) .............................13

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, ECF No. 100 (D. Mass. Apr. 7, 2021)..............................13

*Tracey v. MIT*,
    2018 WL 5114167 (D. Mass. Oct. 19, 2018)..................................................23

*Tussey v. ABB, Inc.*,
    2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)............................................21, 23

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ........................................................................15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ............................................4, 23

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL3000490 (C.D. Cal. Feb. 6, 2018).....................................................4

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 8334858 (C.D. Cal. July 30, 2018) ...................................................13

*Vellali v. Yale Univ.*,
    333 F.R.D. 10 (D. Conn. Sept. 24, 2019) ........................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................................9, 12

*Wildman v. Am. Century Servs. LLC*,
    2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ..................................................4, 23

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ............................................................14

## Rules, Regulations, and Statutes

29 U.S.C. § 1104(a) ....................................................................................................22

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended,
    75 Fed. Reg. 33830 ...........................................................................................8

Fed. R. Civ. P. 23(a)(1) ........................................................................................18, 19

Fed. R. Civ. P. 23(a)(4) ..............................................................................................20

Fed. R. Civ. P. 23(b)(1) ..............................................................................................21

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................17

Fed. R. Civ. P. 23(e)(1) ..............................................................................................17

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................9

Fed. R. Civ. P. 23(e)(2) ..............................................................................................10

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................11

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................................16

Fed. R. Civ. P. 23, Advisory Committee Note (1966) ...............................................22

Fed. R. Civ. P. 23(e)(2) Advisor Committee Note (2018)............................................................10

**<u>Other Authorities</u>**

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ...........................................................................9

Restatement (Third) of Trusts, § 100 cmt. b(1) .........................................................................14

x

## **INTRODUCTION**

Plaintiffs Eric Goldstein, Matt Sudol, and Bonnie Zelazek submit this Memorandum in support of their Motion for Preliminary Approval of the class action settlement with Defendants Mutual of America Life Insurance Company ("Mutual of America") and the Mutual of America Investment Manager Committee ("Committee") relating to the management of the Mutual of America Life Insurance Company Savings Plan ("Plan").[1]

Under the proposed Settlement's terms, Mutual of America will cause its insurers to pay a Gross Settlement Amount of $2,750,000 into a common fund for the Settlement Class's benefit. This is a significant recovery for the Settlement Class compared to the claims that were alleged, and it falls well within the range of negotiated settlements in similar ERISA cases. The Settlement also provides for meaningful prospective relief, as Defendants will ensure that at least half of the Plan's investments are unaffiliated with Defendants (i.e., investments not managed by Mutual of America or any of its affiliates or subsidiaries) for the next three years. Defendants have also agreed to retain the Plan's current net asset value ("NAV") investment platform for the next three years provided, however, that Defendants will not be bound by this if they determine that using the NAV platform is no longer consistent with ERISA.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that notice may be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, after Defendants produced Plan financial records and governing documents requested by Plaintiffs;

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Brock J. Specht ("Specht Decl."). Unless otherwise specified herein, all capitalized terms have the meaning assigned to them in Article 1 of the Settlement Agreement.

- The Settlement provides for significant monetary relief and an equitable method of distribution to Class Members;

- The Settlement provides for automatic distribution of the settlement proceeds to the accounts of Participant Class Members, and Former Participant Class Members who no longer have active accounts will automatically receive their distribution via check unless they elect a tax-qualified rollover of their distribution to an individual retirement account or other eligible employer plan;

- The Settlement provides for meaningful prospective relief;

- The proposed Settlement Class is consistent with the requirements of Rule 23;

- The release is appropriately tailored to the claims that were asserted in the action;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement; and

- The Settlement provides Class Members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notices and authorizing distribution of the Settlement Notices to the Settlement Class; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the accompanying proposed Preliminary Approval Order. Although Defendants dispute the allegations and deny liability for any alleged violations of ERISA or any other law, they do not oppose the relief sought in this motion.

## **BACKGROUND**

### I.    THE PLEADINGS AND MOTIONS TO DISMISS

On September 14, 2022, Plaintiffs filed this action alleging that Mutual of America breached its ERISA fiduciary duties by (1) hiring itself as the Plan's recordkeeper and charging the Plan fees that significantly exceeded what unaffiliated vendors charge for comparable services; and (2) applying an imprudent and disloyal preference for its own overpriced and poorly

performing proprietary funds. Mutual of America moved to dismiss on November 8, 2022. *ECF No. 23.* Plaintiffs then filed an amended complaint adding the Committee and John and Jane Does 1-20 as defendants as well as additional information supporting their allegations. *ECF No. 32.* Defendants moved to dismiss the Amended Complaint on December 22, 2022. *ECF No. 36.* Plaintiffs responded to Defendants' motion on January 26, 2023, *ECF No. 44*, and Defendants filed a reply on February 16, 2023, *ECF No. 45*. As of the date of this immediate motion, the Court has not ruled on the pending motion to dismiss.

## II.      DISCOVERY AND SETTLEMENT

The Parties appeared for an initial status conference on November 9, 2022. *See ECF No. 30.* At the conference, the Court encouraged the Parties to discuss the possibility of an early settlement and to exchange targeted discovery that would facilitate such discussions. *Id.* The Court also stayed formal discovery while the Parties pursued these discussions. *ECF No. 27.* Following entry of the stay, the parties proceeded with targeted discovery to facilitate settlement discussions. *Specht Decl. ¶ 15.* As part of this process, Defendants produced several important categories of documents, including Plan governing documents, financial records, and disclosures, and the Parties engaged in arms-length settlement negotiations. *Id.* At a pre-settlement conference with the Court on March 9, 2023, the Parties reported that they were engaged in ongoing, productive settlement negotiations, and the Court scheduled a follow-up conference for March 28, 2023. *Id. ¶ 16.*; *see also ECF No. 48.* In the interim, the Parties reached an agreement in principle to resolve the case on a class-wide basis, *ECF No. 50,* and subsequently drafted the comprehensive Settlement Agreement that is the subject of this motion. *Id. ¶ 17.*

III.     OVERVIEW OF SETTLEMENT TERMS

A.     The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

All participants in and beneficiaries of the Mutual of America Life Insurance Company Savings Plan at any time on or after September 14, 2016, through the date the Court enters the Preliminary Approval Order, excluding any persons with responsibility for the Plan's administrative functions or investments.

*Settlement ¶ 1.9.* This Settlement Class is consistent with certified classes in several similar ERISA suits, as it includes all participants in the Plan during the Class Period except those with fiduciary responsibilities relating to the Plan.[2] Based on the information provided by Defendants, there are approximately 2,045 Class Members. *Specht Decl. ¶ 3.*

B.     Monetary Relief

Under the Settlement, Defendants will cause their insurers to pay a Gross Settlement Amount of two million seven hundred fifty thousand dollars ($2,750,000) to a common Settlement Fund. *Settlement ¶ 1.29.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 5.1-5.10.* Under the Plan of Allocation, the Net Settlement Amount will be divided between the Recordkeeping Claim (25% of Net Settlement Amount) and Investment Claim (75% of Net Settlement Amount). *Id. ¶ 5.2.*

---

[2] *See, e.g., Wildman v. Am. Century Servs. LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ("*Wildman I*") (certifying litigation class of all plan participants and beneficiaries excluding Defendants, members of the board, and "employees with responsibility for the Plan's investment or administrative functions"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017) ("*Moreno I*") (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) ("*Urakhchin I*") (same); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 335 at ¶ 3 (S.D.N.Y. Oct. 9, 2018) ("*Moreno III*") (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL3000490, at *5-6 (C.D. Cal. Feb. 6, 2018) ("*Urakhchin II*") (same).

4

### a.    Recordkeeping Claim Entitlement Amount

To calculate each Class Member's Recordkeeping Claim Entitlement Amount, the Settlement Administrator shall determine the number of quarters that each individual maintained a balance in the Plan above $0.00 that was invested in Mutual of America Funds or Unaffiliated Plan Funds from September 16, 2016 through November 30, 2021. *Id. ¶ 5.3(a)(i)*.[3] Each quarter will represent one point for that individual, except that any balance from September 16, 2016, through September 30, 2016, will count as .15 points and any balance from October 1, 2021 to November 30, 2021, will count as .66 points. The maximum number of points that a participant may receive is 20.81. *Id.* The Settlement Administrator shall then divide each individual's points by the sum of the points of all Class Members. *Id. ¶ 5.3(a)(ii).* The Settlement Administrator shall then determine each Class Member's Recordkeeping Claim Entitlement Amount by taking the percentage calculated in 5.3(a)(ii) and multiplying it by 25% of the Net Settlement Amount. *Id. ¶ 5.3(a)(iii).*

### b.    Investment Claim Entitlement Amount

For each Class Member, the Settlement Administrator shall determine an Average Qualifying Account Balance, defined as follows:

> Each Class Member's average, aggregate quarter-ending account balance invested in Mutual of America Funds and the Interest Accumulation Account in Plan for the period of September 14, 2016 to May 1, 2023.[4]

---

[3] On December 1, 2021, the Plan terminated its group annuity contract with Mutual of America and moved to a net asset value platform. *Am. Compl. ¶ 21.*

[4] Mathematically stated, the Average Qualifying Account Balance shall be calculated as follows:

(Q3 2016 Account Balance * (14/92)) + (Q4 2016 Account Balance) + (Q1 2017 Account Balance) + (Q2 2017 Account Balance) + (Q3 2017 Account Balance) + (Q4 2017 Account Balance) + (Q1 2018 Account Balance) + (Q2 2018 Account Balance) + (Q3 2018 Account Balance) + (Q4 2018 Account Balance) + (Q1 2019 Account Balance) + (Q2 2019 Account Balance) + (Q3 2019 Account Balance) + (Q4 2019 Account Balance) + (Q1 2020 Account Balance) + (Q2 2020 Account Balance) + (Q3 2020 Account Balance) + (Q4 2020 Account Balance) + (Q1 2021 Account Balance) + (Q2 2021 Account Balance) + (Q3 2021 Account Balance) + (Q4 2021 Account Balance) + (Q1 2022 Account Balance) + (Q2 2022 Account Balance) + (Q3 2022 Account Balance) + (Q4 2022 Account Balance) + (Q1 2023 Account Balance) + (Q2 2023 Account Balance * (30/91)))
Divided by 26.49 quarters during the Class Period.

*Id. ¶ 5.3(b)(i).* The Settlement Administrator shall then determine each Class Member's Investment Claim Entitlement Amount by calculating each individual's pro rata share of 75% of the Net Settlement Amount, based on their Average Qualifying Account Balance compared to the sum of all Class Members' Average Qualifying Account Balances. *Id. ¶ 5.3(b)(ii).* The Settlement Administrator will then determine each Class Member's Final Entitlement Amount by adding their Recordkeeping Claim Entitlement Amount and Investment Claim Entitlement Amount. *Id. ¶ 5.3(c).*

Participant Class Members will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 5.4.* Former Participant Class Members will automatically receive a direct payment by check unless they elect to have their distribution rolled over to an individual retirement account or other eligible employer plan. *Id. ¶ 5.5.*[5]

Under no circumstances will any monies revert to Defendants. *Id. ¶ 5.8(b).* Any uncashed checks will be transferred to the Plan's forfeiture account and treated as a forfeiture under the Plan's terms, except that no such funds will be used to reduce any Employer contribution (e.g., matching or profit sharing) under Section 4.3(e) of the Plan's terms. *Id.*

C.     **Prospective Relief**

The Settlement also provides for meaningful prospective relief. Specifically, Defendants will ensure that, for the next three years, at least half of the Plan's investment funds are managed by third-party entities unaffiliated with Mutual of America. *Id. ¶ 6.1.* Defendants have also agreed to retain the Plan's current NAV investment platform for the next three years, unless Defendants determine that using the NAV investment platform is no longer consistent with ERISA. *Id.*

---

[5] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks. *Specht Decl. ¶ 10 n.4.*

### D.     Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release

Defendants and affiliated persons and entities ("Released Parties") from all claims:

- That were asserted in the Action or that arise out of the institution, prosecution, or settlement of the Action allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences that are alleged or asserted in the Action;[6] or

- That would be barred by *res judicata* based on entry by the Court of the Final Approval Order; or

- That relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Qualified Settlement Fund under the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or

- That relate to the approval by the Independent Fiduciary of the Settlement unless brought against the Independent Fiduciary alone.

*Id. ¶ 1.43.* The Released Claims do not include claims to enforce the Settlement Agreement. *Id. ¶ 8.5.*

### E.     Class Notice and Settlement Administration

All Class Members will receive notice of the settlement. Settlement Notices will be sent to

Class Members with a current account balance in the Plan via the email address on file with the

Plan's recordkeeper, and to former participants who no longer have a balance via first-class U.S.

Mail. *Id. ¶ 3.2(c); Exs. 1 & 2.* The Settlement Notices provide information to the Settlement Class

regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class;

(3) the terms of the Settlement; (4) Class Members' right to object to the Settlement and the

deadline for doing so; (5) the class release; (6) the identity of Class Counsel and the amount of

compensation they will seek in connection with the Settlement; (7) the amount of the proposed

---

[6] The release language goes on to provide certain examples that are not repeated here due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement, ¶ 1.43.

Class Representative service award; (8) the date, time, and location of the final approval hearing; and (9) Class Members' right to appear at the final approval hearing and object. *Exs. 1 & 2.*

To the extent that Class Members would like more information, the Settlement Administrator will establish a Settlement Website on which it will post the Settlement Agreement, Notices, and relevant case documents, including the Complaint and a copy of all Court orders related to the Settlement. *Settlement ¶ 3.3(a).* The Settlement Administrator also will establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id. ¶ 3.3(c).*

### F.    Attorneys' Fees and Administrative Expenses

The Settlement requires that Class Counsel file their motion for Attorneys' Fees and Costs at least 14 days before the deadline for objections to the proposed Settlement. *Settlement ¶ 7.1.* In addition, the Settlement provides for recovery of Administrative Expenses related to the Settlement, and for service awards up to $5,000 per Class Representative. *Id ¶¶ 7.1-7.2.* The Settlement is not conditioned on the award of any such amounts, and the denial of any of these awards shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement. *Id. ¶¶ 7.1-7.2.*

### G.    Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id. ¶ 2.2*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report at least 30 days before the final Fairness Hearing, so it may be considered by the Court. *Id. ¶ 2.2(b).*

8

<u>**ARGUMENT**</u>

**I.    STANDARD OF REVIEW**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In the first step, the Court considers whether the settlement warrants preliminary approval, such that notice of the settlement may be sent to the class members. *Id.*[7] In the second step, after notice of the proposed settlement has been issued and class members have had an opportunity to be heard, the Court considers whether the settlement warrants final court approval. *Id*.

The decision whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (reviewing the district court's approval of a settlement for an abuse of discretion). But there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotation omitted). As a result, "courts should give proper deference to the private consensual decision of the parties … [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark*, 2009 WL 6615729, at *3 (quotations omitted).

Under Rule 23(e)(1) as amended in 2018, courts are authorized to grant preliminary approval of a proposed settlement so long as the court will "likely be able to" grant final approval of the settlement and certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B); *In re*

---

[7] A motion for preliminary approval involves only an "initial evaluation" of the fairness of the proposed settlement. *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:25 (4th ed. 2002)). To grant preliminary approval, the Court need only find that there is "probable cause" to submit the settlement to class members and hold a full-scale hearing as to its fairness. *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

*GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). As explained below, this standard is satisfied here.

## II.   THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL.

To approve a settlement under Rule 23(e)(2), the Court must consider four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2); *see also GSE Bonds*, 2019 WL 6842332, at *1 (explaining that new Rule 23 factors "supplement rather than displace the[] '*Grinnell*' factors" previously applied in this circuit).[8] All four of these factors and the relevant *Grinnell* factors support preliminary approval of the Settlement.

### A.   The Class is Adequately Represented.

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class before preliminarily approving a settlement." *GSE Bonds*, 2019 WL 6842332, at *2. This adequacy standard is easily met here.

The named Plaintiffs have adequately represented the Settlement Class. At the outset of litigation, the named Plaintiffs signed written acknowledgements of their duties as class representatives, and each of them has sought to fulfill those duties throughout the course of this case. *See Goldstein Decl. ¶ 2 & Ex. 1*; *Sudol Decl. ¶ 2 & Ex. 1*; *Zelazek Decl. ¶ 2 & Ex. 1.* Among other things, the named Plaintiffs have reviewed the allegations in the Complaint and Amended

---

[8] The nine *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). Consistent with the intent of the 2018 amendments, only those *Grinnell* factors that are relevant to this Settlement are addressed here. *See* Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) (observing that the new Rule 23(e) factors are intended to help the court and counsel focus on the most pertinent considerations: "This amendment . . . directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.").

Complaint, provided information and documents to counsel to assist in the investigation and prosecution of the action; made themselves available answer questions from counsel and to stay informed on the status of the action, and conferred with counsel regarding the potential strengths and weaknesses of the claims asserted in this action and the potential risks and rewards of the Settlement compared to pursuing further litigation. *See Goldstein Decl. ¶¶ 2-3 & Ex. 1*; *Sudol Decl. ¶¶ 2-3 & Ex. 1*; *Zelazek Decl. ¶¶ 2-3 & Ex. 1.* The named Plaintiffs fall within the proposed Settlement Class and are not aware of any conflicts between themselves and any other class members. *See Goldstein Decl. ¶ 2 & Ex. 1*; *Sudol Decl. ¶ 2 & Ex. 1*; *Zelazek Decl. ¶ 2 & Ex. 1.* Thus, the Named Plaintiffs are adequate class representatives, who have diligently pursued this action on behalf of the Class.

Class Counsel is also more than adequate. The lawyers at Nichols Kaster are experienced ERISA litigators with a proven track record. *See Specht Decl. ¶¶ 23-26.* Indeed, Nichols Kaster "is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). As detailed in the accompanying declaration, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently tried three ERISA class actions; (3) successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018); and (4) negotiated numerous ERISA class action settlements in addition to the present settlement. *See Specht Decl. ¶¶ 23-26.* Given this, Class Counsel are more than adequate to represent the proposed Settlement Class.

### B.    The Proposed Settlement was Negotiated at Arm's-Length.

The second factor examines whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A class action settlement "will enjoy a presumption of fairness" where the

settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]" *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) (quotation omitted); *see also Wal-Mart*, 396 F.3d at 116. That is exactly the situation here. Class Counsel and Defendants' counsel (Goodwin Procter, LLP) are knowledgeable and experienced in complex class actions such as this, in addition to well-respected members of the ERISA class action bar. *See Specht Decl. ¶ 23-26 & Ex. B.* At all times, the negotiations were conducted at arm's length. *Id. ¶ 15.* Accordingly, this factor also favors settlement approval.

"[T]he stage of the proceedings and the amount of discovery completed" are also pertinent to the Court's review. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016) (quotation omitted). While this case settled early in the discovery period, the following actions had already occurred: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiffs' claims prior to commencing the action, *Specht Decl. ¶ 13*; (2) the parties' factual and legal contentions were staked out in connection with the original motion to dismiss, the Amended Complaint, and the renewed motion to dismiss, *id. ¶ 14*; (3) Defendants produced several categories of important Plan documents prior to settlement negotiations, *id. ¶ 15*; and (4) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions and the early discovery that was produced, *id. ¶¶ 19-21.* These circumstances further favor approval of the Settlement. *See Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement.").[9]

---

[9] Although this case was settled early, Class Counsel are no strangers to lengthy ERISA litigation. As noted above, Class Counsel have recently taken three ERISA class cases to trial, and litigated the *Deutsche Bank* ERISA action in

### C.     The Settlement Provides Significant Relief to Class Members that is Fair and Adequate Based on All Relevant Considerations.

The parties' negotiations resulted in a Settlement that provides substantial relief to the Class. The negotiated monetary relief represents a significant portion of the alleged losses sustained by the Plan. At the time of the settlement, Plaintiffs' damages models estimated that the total losses were approximately $10.3 million. *Specht Decl. ¶ 4.* Based on this estimate, the $2.75 million recovery represents approximately 26% of the total estimated losses. *Id.* This is on par with numerous other ERISA class action settlements that have been approved across the country.[10]

The Settlement also provides for meaningful prospective relief. As noted above, Defendants will (1) ensure that, for the next three years, at least half of the Plan's investment funds are unaffiliated with Defendants; and (2) retain the Plan's current NAV investment platform for the next three years (unless they determine that using that platform is no longer consistent with ERISA). *Settlement ¶ 6.1.* This relief addresses the core issue that Plaintiffs raised in the lawsuit and is designed to ensure that the Plan's expenses are reasonable going forward. This further supports approval of the Settlement. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 348 at 4-5 (S.D.N.Y. Mar. 7, 2019) ("*Moreno IV*") (finding that "non-monetary benefits" intended to address the core issues that gave rise to the lawsuit "have

---

this District to the very eve of trial before it was settled. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 321 at 5 (S.D.N.Y. Aug. 14, 2018) *("Moreno II")* ("[T]he parties reached a settlement-in-principle on July 8, 2018 immediately preceding the scheduled start date of trial." (internal parentheses omitted)).

[10] *See, e.g., Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, ECF No. 95 at 10 (D. Mass. Mar. 24, 2021), *approved* ECF No. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, ECF No. 32 at 12 (D. Mass. May 6, 2019), *approved* ECF No. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858, at *4 (C.D. Cal. July 30, 2018) ("*Urakhchin III*") (approximately 17.7% of losses under plaintiffs' highest model); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under plaintiffs' highest model).

significant value for Plan participants"); *accord Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (finding that settlement was "fair, reasonable, and adequate" where it provided for "meaningful injunctive relief").

Moreover, each of the adequacy factors enumerated in Rule 23(e)(2)(C) support approval of the Settlement. These factors include:

    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors are briefly discussed below.

### 1.    The Costs, Risks, and Delay of Further Litigation were Significant.

In the absence of a settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). While Plaintiffs are confident that they would have prevailed on the pending motion to dismiss, there was a risk that the Court might have dismissed the claims, either now on the pleadings or later on a motion for summary judgment. And, if the case proceeded to trial, Defendants still might have prevailed.[11] Finally, even if Plaintiffs prevailed on liability, issues regarding proof of loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1)

---

[11] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd in part, rev'd in part*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

(determination of losses in breach of fiduciary duty cases is "difficult"); *Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes— including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").

        None of this is to say that Plaintiffs lacked confidence in their claims. But continuing the litigation would have resulted in complex and costly proceedings, and it would have delayed any relief to the Class, even if Plaintiffs ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("*Krueger II*"). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 954–56 (8th Cir. 2017) ("*Tussey II*") (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly complex"); *Koerner v. Copenhaver*, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are complicated, require the elucidation of experts, and are far from certain."). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

15

### 2.    The Proposed Method of Distributing Relief to the Class is Effective.

The proposed method for distributing the Settlement proceeds is fair and reasonable. Participant Class Members will have their Plan accounts automatically credited with their share of the Settlement, and Former Participant Class Members will automatically receive their distribution via check unless they elect a tax-qualified rollover of their distribution to an individual retirement account or other eligible employer plan. *See supra* at 2, 6. This method of distribution is both effective and efficient. No monies will revert to Defendants, and any uncashed checks will be transferred to the Plan's forfeiture account and treated as a forfeiture under the Plan's terms, except that no such funds will be used to reduce any Employer contribution. *See Settlement ¶ 5.8 (b).*

### 3.    The Settlement Imposes a Reasonable Limitation on Attorneys' Fees.

The Settlement terms relating to attorneys' fees are also fair and reasonable. The Settlement does not provide for the award of a specific amount of attorneys' fees and is not conditioned on the award of *any* such fees, which will be reserved to the Court in its discretion upon application by Class Counsel. *See id. ¶ 7.1.* Moreover, with respect to the timing of payment, any attorneys' fees will be paid at the same time that funds to the class are distributed. *See id. ¶ 4.8.*

### 4.    No Separate Agreements Bear on the Adequacy of Relief to the Class.

As the Settlement states, "[t]his Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto." *Id.¶ 12.5.* Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### 5.    The Settlement Treats Class Members Equitably.

Finally, the Settlement also treats Class Members equitably. The same allocation formula is used to calculate settlement payments for all eligible Class Members (both Participant Class

Members and Former Participant Class Member). *See id.* ¶ *5.3.* Moreover, that allocation formula is carefully tailored to the claims that were asserted in the case. *See supra* at 4-6; *Specht Decl.* ¶ *6.* This further supports approval of the Settlement.

## III.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED.

The Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort via either United States mail or electronic means. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here. The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via email in the case of current Plan participants and first class U.S. Mail in the case of former Plan participants. *Settlement* ¶ *3.2(b).* This type of notice is presumptively reasonable. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The content of the Notices is also reasonable. The Notices include all relevant information, *see supra* at 7-8, and "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 Fed. App'x 37, 41 (2d Cir. 2013) (quotation omitted); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). And the Notices will be supplemented through the Settlement Website and telephone support line. *See supra* at 8.

IV.     THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

In addition to approving the Settlement and authorizing distribution of the Notices, this Court should certify the Settlement Class for settlement purposes.[12] To certify the class, Plaintiffs must satisfy the requirements of Rule 23(a) and meet one of the prerequisites of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011). In the context of settlement, however, the Court need not inquire whether a trial of the action would be manageable on a class-wide basis because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. And "ERISA breach of fiduciary duty claims are particularly appropriate for class certification" under Rule 23 because these claims are "brought in a representative capacity on behalf of the plan as a whole." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010) (quotation omitted). That is precisely the nature of this action. *See ECF No. 32 ¶ 10, 70* (citing 29 U.S.C. §§ 1109, 1132(a)(2)). And here, all of the requirements of Rules 23(a) and 23(b)(1) are met. So, the Settlement Class should be certified.

A.      **The Proposed Settlement Class Satisfies Rule 23(a).**

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 620. Each of these requirements is met here for settlement purposes.

1.      **Numerosity**

Numerosity requires that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). This standard is

---

[12] In the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

clearly met for the Settlement Class, which includes approximately 2,045 Class Members. *See supra* at 4. This far exceeds the threshold for numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

## 2.   Commonality

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1). This does not mean that all class members must make identical claims and arguments, but only that "plaintiffs' grievances share a common question of law or of fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Moreno I*, 2017 WL 3868803, at *4 (quoting *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

"'Typically, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'" *Id.* (quoting *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *7 (S.D.N.Y. Mar. 31, 2017)). This case is no exception. This lawsuit raises numerous common questions, including: (1) Whether Defendants are Plan fiduciaries; (2) Whether Defendants breached their fiduciary duties by hiring themselves as the Plan's recordkeeper and then failing to monitor or control recordkeeping expenses; (3) Whether Defendants breached their fiduciary duties by selecting and retaining excessively expensive and poorly performing proprietary funds in the Plan; (4) The proper form of equitable and injunctive relief; and (5) The proper calculation of monetary relief. Accordingly, commonality is satisfied.

### 3.    Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also In re Virtus Invest. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) ("The typicality requirement overlaps with that of commonality."). Typicality is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Moreno I*, 2017 WL 3868803, at *7 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). This does not require that the situation of the named representative and the class members be identical. *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). Rather, it is sufficient that "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (quotation omitted).

Here, Plaintiffs' claims are consistent with those of other Class Members who participated in the Plan, as they arise from the selection and retention of Mutual of America's proprietary funds and proprietary recordkeeping services. Plaintiffs do not have any unique claims against Defendants beyond those shared with the Settlement Class. Therefore, their claims are typical of the Settlement Class. *See Moreno I*, 2017 WL 3868803, at *7 (finding class representatives' claims regarding proprietary funds and allegedly excessive recordkeeping expenses were typical of the class).

### 4.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement: (1) class counsel must

be qualified, experienced and generally able to conduct the litigation; and (2) the representative plaintiffs' interests must not be antagonistic to those of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of those requirements are met for the reasons discussed above. *See supra* at 10-11.

### B.     The Proposed Class Satisfies Rule 23(b)(1).

In addition to meeting the requirements of Rule 23(a), the proposed Class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Here, the proposed Settlement Class satisfies both prongs. *See, e.g., Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576-78 (D. Minn. 2014) ("*Krueger I*") (certifying class under both prongs). "Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (quotation omitted).[13]

---

[13] *See also Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 105 (D. Mass. 2010) ("[I]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." (quotation omitted)); *Tussey v. ABB, Inc.*, WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007) ("*Tussey I*") ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(l).").

### 1.    Rule 23(b)(1)(A)

Certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. 29 U.S.C. § 1104(a). Accordingly, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as ... determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries." *Krueger I*, 304 F.R.D. at 577; *see also Shanehchian v. Macy's, Inc.*, 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible.").

### 2.    Rule 23(b)(1)(B)

Likewise, because an adjudication on behalf of one participant of the Plan would effectively be dispositive of the claims of the other class members, class certification is also appropriate under Rule 23(b)(l)(B). *See Moreno I*, 2017 WL 3868803, at *8. The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966). "[T]his case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plan[]

and the thousands of participants in the Plan[]." *Shanehchian,* 2011 WL 883659, at *10. Numerous courts have granted certification under Rule 23(b)(1)(B) in similar cases.[14]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Parties' Class Action Settlement Agreement; (2) approve the proposed Settlement Notices and authorize distribution of the Notices to the proposed Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Dated: April 14, 2023                              Respectfully submitted,

**NICHOLS KASTER, PLLP**

By: s/ Brock J. Specht
Paul J. Lukas, NY Bar No. 4522207
Brock J. Specht, MN Bar No. 0388343*
Grace I. Chanin, MN Bar No. 0399969*
 *admitted *pro hac vice*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200

---

[14] *See, e.g., Karg v. Transamerica Corp.,* 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020); *Vellali v. Yale Univ.,* 333 F.R.D. 10 (D. Conn. Sept. 24, 2019); *Stevens v. SEI Investments Co.,* No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n,* 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cunningham v. Cornell Univ.,* 1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019); *Cates v. The Trustees of Columbia University in the City of New York et al,* 1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018); *Cassell v. Vanderbilt Univ.,* 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey v. MIT,* 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Henderson v. Emory Univ.,* 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Clark v. Duke Univ.,* 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.,* 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Wildman,* 2017 WL 6045487; *Moreno I,* 2017 WL 3868803, at *8; *Urakhchin I,* 2017 WL 2655678, at *8; *Krueger I,* 304 F.R.D. at 577; *Hochstadt,* 708 F. Supp. 2d at 105; *Brotherston v. Putnam Invs., LLC,* No. 1:15-cv-13825-WGY, ECF No. 88 (D. Mass. Dec. 13, 2016) (text order); *Shanehchian,* 2011 WL 883659, at *10; *In re Beacon Assocs. Litig.,* 282 F.R.D. 315, 342 (S.D.N.Y. 2012); *In re Northrup Grumman Corp. ERISA Litig.,* 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011); *Stanford v. Foamex L.P.,* 263 F.R.D. 156, 174 (E.D. Pa. 2009); *In re Norte/Networks Corp. ERISA Litig.,* 2009 WL 3294827, at *15 (M.D. Tenn. 2009); *Jones v. NovaStar Fin., Inc.,* 257 F.R.D. 181, 193 (W.D. Mo. 2009); *Kanawi v. Bechtel Corp.,* 254 F.R.D. 102 (N.D. Cal. 2008); *Tussey I,* 2007 WL 4289694; *In re Tyco, Int'l, Ltd. Multidistrict Litig.,* 2006 WL 2349338, at *7 (D.N.H. Aug. 15, 2006); *In re Williams Co. ERISA Litig.,* 231 F.R.D. 416, 425 (N.D. Okla. 2005); *WorldCom,* 2004 WL 2211664; *Koch v. Dwyer,* 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466 (E.D. Pa. 2000).

Facsimile: 612-338-4878
lukas@nka.com
bspecht@nka.com
gchanin@nka.com

ATTORNEYS FOR PLAINTIFFS