**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Eric Goldstein, Matt Sudol, and Bonnie Zelazek, individually and as representatives of a class of similarly situated persons, and on behalf of the Mutual of America Life Insurance Company Savings Plan,<br><br>                    Plaintiffs,<br><br>v.<br><br>Mutual of America Life Insurance Company, the Mutual of America Investment Manager Committee, and John and Jane Does 1-20,<br><br>                    Defendants. | Case No. 1:22-cv-7862-GHW-OTW<br><br><br><br>CLASS ACTION |

**Memorandum of Law in Support of Plaintiffs' Motion**
**for Final Approval of Class Action Settlement**

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................1

I.     PROCEDURAL HISTORY ..................................................................................................1

    A.    The Pleadings and Motions to Dismiss.............................................................1

    B.    Discovery, Mediation, and Settlement..............................................................2

    C.    Preliminary Approval of the Settlement ...........................................................3

II.    OVERVIEW OF SETTLEMENT TERMS ..............................................................................3

    A.    Settlement Class.................................................................................................3

    B.    Monetary Relief .................................................................................................4

    C.    Prospective Relief .............................................................................................4

    D.    Release of Claims ..............................................................................................5

    E.    Class Notice and Reaction to the Settlement ....................................................5

    F.    Review and Approval by Independent Fiduciary ..............................................6

ARGUMENT ...............................................................................................................................7

I.    STANDARD OF REVIEW ..................................................................................................7

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..........................................8

    A.    The Class Representatives and Class Counsel Have Adequately Represented the Class ...............................................................................................................8

    B.    Class Counsel and Defense Counsel Negotiated this Settlement at Arm's Length ....9

    C.    The Settlement Provides Significant Relief to the Class ...........................................11

        1.    Continued Litigation Would Have Entailed Significant Costs and Risks ..........12

        2.    The Proposed Method of Distributing Relief to the Class is Effective...............14

        3.    The Settlement Imposes a Reasonable Limitation on Attorneys' Fees ..............14

4.   No Separate Agreements Bear on the Adequacy of Relief to the Class .............14

D.   The Settlement Treats Class Members Equitably .......................................................15

E.   The Independent Fiduciary and All Class Members Support the Settlement ...........15

III.   THE CLASS NOTICE PROGRAM WAS REASONABLE AND EFFECTIVE ............................15

IV.   THE COURT SHOULD REAFFIRM CERTIFICATION OF THE SETTLEMENT CLASS.............17

CONCLUSION....................................................................................................................18

## **TABLE OF AUTHORITIES**

### **Cases**

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015)....................................................................13

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
    No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020)................................................11

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ......................................................................11

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018) .................................................................................................9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...............................................................................................8

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-CV-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................16

*In re Excess Value Ins. Coverage Litig.*,
    2004 WL 1724980 (S.D.N.Y. July 30, 2004) ...................................................................10

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..............................................................................16

*In re Global Crossing Secs. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................9

*In re GSE Bonds Antitrust Litig.*,
    No. 19-CV-1704, 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .......................................8

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................17

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................................12

*In re WorldCom, Inc. ERISA Litig.*,
    2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)....................................................................12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ..................................................................11

iv

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ...................................................................9

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
  2016 WL 6542707 (D. Conn. Nov. 3, 2016) .................................................................10

*Krueger v. Ameriprise Fin., Inc.*,
  2015 WL 4246879 (D. Minn. July 13, 2015) .................................................................13

*Kruger v. Novant Health, Inc.*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .............................................................13

*Langford v. Devitt*,
  127 F.R.D. 41 (S.D.N.Y. 1989) ....................................................................................16

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..............................................................12

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) ...................................................................3

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 1:15-cv-09936, ECF No. 321 (S.D.N.Y. Aug. 14, 2018) ........................................11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 1:15-cv-09936, ECF No. 335 (S.D.N.Y. Oct. 9, 2018) .............................................4

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 1:15-cv-09936, ECF No. 348 (S.D.N.Y. Mar. 7, 2019) ..........................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................................16

*Price v. Eaton Vance Corp.*,
  No. 18-12098, ECF No. 32 (D. Mass. May 6, 2019) .....................................................11

*Price v. Eaton Vance Corp.*,
  No. 18-12098, ECF No. 57 at 12 (D. Mass. Sept. 24, 2019) .........................................11

*Rozo v. Principal Life Ins. Co.*,
  2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ................................................................13

*Sacerdote v. New York Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018) ...........................................................................13

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019).................................................................11

*Tibble v. Edison Int'l*,
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) .........................................................13

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, ECF No. 95 (D. Mass. Mar. 24, 2021).....................................11

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, ECF No. 100 (D. Mass. April 7, 2021)......................................11

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ....................................................................................13

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017)...........................................................3

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018).............................................................4

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 8334858 (C.D. Cal. July 30, 2018) .........................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................8, 10, 15, 17

*Wildman v. Am. Century Servs. LLC*,
    No. 4:16-CV-00737, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)...........................3

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019).....................................................................13

## Rules, Statutes, Regulations

28 U.S.C. § 1715(b) ....................................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................16

Fed. R. Civ. P. 23(e)(2) ...........................................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................15

Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) ............................................................8

75 Fed. Reg. 33830 ..............................................................................................................6

**<u>Other Authorities</u>**

Restatement (Third) of Trusts, § 100 cmt. b(1) ............................................................13

## INTRODUCTION

On June 6, 2023, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' class action claims against Defendants Mutual of America Life Insurance Company, the Mutual of America Investment Manager Committee, and John and Jane Does 1-20 ("Defendants") under the Employee Retirement Income Security Act ("ERISA") for their management of the Mutual of America Life Insurance Company Savings Plan ("Plan"). *ECF No. 63.* The Court found on a preliminary basis that the terms of the Settlement are "fair, reasonable, and adequate," as well as in accordance with all applicable requirements of law, and approved the distribution of the Notices of Settlement as specified in the Settlement Agreement. *Id. at 2, 8.* Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable,[1] and no Class Members have objected to the settlement, *Third Specht Decl.* ¶ *6.* Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. As parties to the Settlement, Defendants do not oppose this motion.

## BACKGROUND

I.    **PROCEDURAL HISTORY**[2]

A.    **The Pleadings and Motions to Dismiss**

On September 14, 2022, Plaintiffs filed this action alleging that Mutual of America breached its fiduciary duties under ERISA by hiring itself as the Plan's recordkeeper, charging the Plan fees at a cost of up to ten times more than what other recordkeepers would have charged for similar services, and applying an imprudent and disloyal preference for its own overpriced and

---

[1] *See Decl. of Brock Specht in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement* ("*Third Specht Decl.*"), *Ex. 1* (Independent Fiduciary Report).

[2] This case's procedural history has already been outlined in connection with Plaintiffs' motion for preliminary approval, *ECF No. 55; ECF No. 56 at 2-3*, and motion for attorneys' fees and costs, administrative expenses, and class representative service awards, *ECF No. 68 at 1-2.* For ease of reference, Plaintiffs have recounted that history here.

poorly performing proprietary funds. *ECF No. 1. ¶¶ 1, 6-8.* Mutual of America filed a motion to dismiss the Complaint, *ECF No. 23*, Plaintiffs then amended their complaint adding the Committee and John and Jane Does 1-20 as defendants as well as additional factual allegations supporting their claims, *ECF No. 32*. Defendants subsequently moved to dismiss the Amended Complaint, *ECF No. 36*, Plaintiffs responded on January 26, 2023, *ECF No. 44*, and Defendants filed a reply on February 16, 2023, *ECF No. 45.* With the Court's encouragement and assistance, the Parties engaged in direct settlement negotiations and reached an agreement prior to the Court issuing a ruling on the motion to dismiss.

### B.    Discovery, Mediation, and Settlement

The Parties appeared for an initial status conference on November 9, 2022. *See ECF No. 30.* At the conference, the Court encouraged the Parties to discuss the possibility of an early settlement and to exchange targeted discovery that would facilitate such discussions. *Id.* The Court also stayed formal discovery while the Parties pursued these discussions. *ECF No. 27.* Following entry of the stay, the parties proceeded with targeted discovery to facilitate settlement discussions. *Decl. of Brock Specht in Supp. of Pls' Mot. for Preliminary Approval of Class Action Settlement ("First Specht Decl."), ECF No. 57 ¶ 15.* As part of this process, Defendants produced several important categories of documents, including Plan governing documents, financial records, and disclosures, and the Parties engaged in arms-length settlement negotiations. *Id.* At a pre-settlement conference with the Court on March 9, 2023, the Parties reported that they were engaged in ongoing, productive settlement negotiations, and the Court scheduled a follow-up conference for March 28, 2023. *Id. ¶ 16.*; *see also ECF No. 48.* In the interim, the Parties reached an agreement in principle to resolve the case on a class-wide basis, *ECF No. 50,* and subsequently drafted the comprehensive Settlement Agreement that is the subject of this motion, *id. ¶ 17.*

2

### C. Preliminary Approval of the Settlement

On June 6, 2023, the Court issued an Order granting preliminarily approval of the Settlement. *ECF No. 63*. In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement are "fair, reasonable, and adequate," as well as in accordance with all applicable requirements of law, and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *ECF No. 63 at 2, 8*. In addition, the Court appointed Atticus Administration, LLC ("Atticus") to serve as the Settlement Administrator, distribute the Notices, and carry out the other duties specified in the Settlement Agreement. *Id. ¶ 7*.

## II. OVERVIEW OF SETTLEMENT TERMS

### A. Settlement Class

In granting preliminary approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants in and beneficiaries of the Mutual of America Life Insurance Company Savings Plan at any time on or after September 14, 2016, through June 6, 2023, excluding any persons with responsibility for the Plan's administrative functions or investments

*Id. ¶ 3*. Based on the information provided by Atticus, there are approximately 2,585 Class Members. *See Decl. of Bryn Bridley ("Bridley Decl.") ¶ 5*. This Settlement Class is consistent with certified classes in several similar ERISA suits, as it includes all participants in the Plan during the Class Period except those with fiduciary responsibilities relating to the Plan.[3] *First Specht Decl. ¶ 3*.

---

[3] *See, e.g.*, *Wildman v. Am. Century Servs. LLC*, No. 4:16-CV-00737, 2017 WL 6045487, at *7 (W.D. Mo. Dec. 6, 2017) (certifying litigation class of all plan participants and beneficiaries excluding Defendants, members of the board, and "employees with responsibility for the Plan's investment or administrative functions"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y Sept. 5, 2017) ("*Moreno I*") (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) ("*Urakhchin I*") (same); *see*

### B.    Monetary Relief

Under the Settlement, Defendants will cause a Gross Settlement Amount of two million seven hundred fifty thousand dollars ($2,750,000) to be paid to a common Settlement Fund. *Settlement Agreement* ("*Settlement*"), *ECF No. 57-01 ¶ 1.29.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 5.1-5.10.* Under the Plan of Allocation, the Net Settlement Amount will be divided between the Recordkeeping Claim (25% of Net Settlement Amount) and Investment Claim (75% of Net Settlement Amount). *Id. ¶ 5.2.*

Participant Class Members will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 5.4.* Former Participant Class Members will automatically receive a direct payment by check unless they elect to have their distribution rolled over to an individual retirement account or other eligible employer plan. *Id. ¶ 5.5.*

Under no circumstances will any monies revert to Defendants. *Id. ¶ 5.8(b).* Any uncashed checks will be transferred to the Plan's forfeiture account and treated as a forfeiture under the Plan's terms, except that no such funds will be used to reduce any Employer contribution (e.g., matching or profit sharing) under the terms of the Plan. *Id.*

### C.    Prospective Relief

The Settlement also provides for meaningful prospective relief. Specifically, Defendants will ensure that, for the next three years, at least half of the Plan's investment funds are managed by third-party entities unaffiliated with Mutual of America. *Id. ¶ 6.1.* Defendants have also agreed

---

*also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 335 at ¶ 3 (S.D.N.Y. Oct. 9, 2018) ("*Moreno III*") (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *2, at *7 (C.D. Cal. Feb. 6, 2018) ("*Urakhchin II*") (same).

to retain the Plan's current NAV investment platform for the next three years, unless Defendants

determine that using the NAV investment platform is no longer consistent with ERISA. *Id.*

### D.    Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release

Defendants and affiliated persons and entities ("Released Parties") from all claims:

- That were asserted in the Action or that arise out of the institution, prosecution, or settlement of the Action allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences that are alleged or asserted in the Action;[4] or

- That would be barred by *res judicata* based on entry by the Court of the Final Approval Order; or

- That relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Qualified Settlement Fund under the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or

- That relate to the approval by the Independent Fiduciary of the Settlement unless brought against the Independent Fiduciary alone.

*Id.* ¶ *1.43.* The Released Claims do not include claims to enforce the Settlement Agreement. *Id.* ¶

*8.5.*

### E.    Class Notice and Reaction to the Settlement

Under the Court's Order preliminarily approving the Settlement, Atticus sent Notice by

U.S. first class mail to 2,585 Class Members. *Bridley Decl.* ¶ *7.* Atticus also sent respective Current

and Former Participant Notices by email to 2,303 Class Members for whom email addresses were

provided by Defense Counsel. *Id.* ¶¶ *5, 10.* Prior to sending these Notices, Atticus cross-referenced

the addresses on the class list with the United States Postal Service National Change of Address

Database. *Id.* ¶ *6.* In the event that any Notices were returned, Atticus re-mailed the Notice to any

---

[4] The release language goes on to provide certain examples that are not repeated here due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement, ¶ 1.43.

forwarding address that was provided and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id.* ¶ *9*. As a result, the notice program was very effective. Atticus was able to successfully mail Notice to 2,562 Class Members (99.11% of the Settlement Class). *Id.* And, of the emails sent, 2,197 (95.39%) were successfully delivered. *Id.* ¶ *10*.

If any Class Members desired further information, they could visit the Settlement Website that Atticus established at www.GoldsteinMutualERISASettlement.com. *Id.* ¶ *11*. The website includes access to the Notices and Rollover Form, various settlement documents filed with the Court – including those provided in the CAFA Notices, key dates and deadlines, answers to frequently asked questions about the settlement, and information on how to contact Atticus. *Id.* Atticus also created and maintained a toll-free telephone support line (1-800-305-9833) as a resource for Class Members seeking additional information. *Id.* ¶ *12*. This telephone number was referenced in the Notices and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement was September 6, 2023. *See ECF No. 63 ¶ 11*. No objections were received. *See Third Specht Decl. ¶ 6; Bridley Decl. ¶ 13*.

On July 20, 2021, Defendants also sent the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *Bridley Decl. ¶ 4*.

**F.    Review and Approval by Independent Fiduciary**

In accordance with Paragraph 2.2 of the Settlement Agreement and applicable ERISA regulations,[5] the Settlement was submitted to an Independent Fiduciary (Newport Trust Company) for review following the Court's Preliminary Approval Order. *See Third Specht Decl., Ex. 1.* Based on its evaluation of the relevant documents and information associated with the class action and

---

[5] *See* Prohibited Transaction Exemption 2003–39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

the Settlement, interviewing counsel for each of the Parties, and taking into account the fiduciary obligations imposed by ERISA, the Independent Fiduciary concluded, among other things, that:

> (i)     the Settlement terms, the $2,750,000 Settlement amount and non-monetary relief provided for in the Settlement, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone;

> (ii)    the scope of the release of claims is reasonable and is consistent with the release of other ERISA settlements that the Independent Fiduciary reviewed in the past year.

*Id.* at 2. Accordingly, the Independent Fiduciary determined that "the Plan should not object to the Settlement or any portion thereof, including but not limited to the requested attorneys' fees and costs" and it "authorize[d] the Plan's participation in the Settlement." *Id.* at 3.

## ARGUMENT

### I.    STANDARD OF REVIEW

To approve a proposed class settlement that would bind potential class members, the Court must conduct a hearing and find that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To find that the settlement is fair, reasonable, and adequate, the Court must consider: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *Id.* Courts in the Second Circuit also traditionally consider the *Grinnell* factors as part of their review: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the

ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005).[6] When conducting this assessment, the Court should remain "mindful of the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores*, 396 F.3d at 116 (quotation omitted).

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The relevant factors outlined above overwhelmingly favor approval of the Settlement in this case. Further, the Independent Fiduciary's report and the total absence of objections from Class Members further confirm that the Settlement is fair, reasonable, and adequate.

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Class.

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class before preliminarily approving a settlement." *GSE Bonds*, 2019 WL 6842332, at *2. This adequacy standard is easily met here.

The named Plaintiffs have adequately represented the Settlement Class. At the outset of litigation, the named Plaintiffs signed written acknowledgements of their duties as class representatives, and each of them has sought to fulfill those duties throughout the course of this case. *See Decl. of Eric Goldstein in Supp. of Pls.' Mot. for Prelim. Approval of Class Action*

---

[6] The Rule 23(e) factors "supplement rather than displace these *Grinnell* factors." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). Consistent with the intent of the 2018 amendments to the Federal Rules of Civil Procedure, only those *Grinnell* factors that are relevant to this Settlement are addressed here. *See* Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) ("This amendment . . . directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.").

Settlement ("Goldstein Decl.") ¶ 2 & Ex. 1, ECF No. 58; Decl. of Matt Sudol in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Sudol Decl.") ¶ 2 & Ex. 1, ECF No. 59; Decl. of Bonnie Zelazek in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Zelazek, Decl.") ¶ 2 & Ex. 1, ECF No. 60.

Class Counsel have also adequately represented the Class. The lawyers at Nichols Kaster are experienced ERISA litigators with a proven track record. *See First Specht Decl. ¶¶ 23-26.* Indeed, Nichols Kaster "is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). As detailed in the attorney declarations accompanying the preliminary approval and fees motions, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently tried three ERISA class actions; (3) successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018); and (4) negotiated numerous ERISA class action settlements in addition to the present settlement. *See First Specht Decl. ¶¶ 19-26; Decl. of Brock Specht in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Award ("Second Specht Decl.") ECF No. 69 ¶¶ 3-9.* Given this, Class Counsel are well qualified to represent the Cass. *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (finding class counsel adequate where they had "extensive experience" in ERISA litigation and federal class actions).

## B.    Class Counsel and Defense Counsel Negotiated this Settlement at Arm's Length.

The second factor examines whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A class action settlement "will enjoy a presumption of fairness" where the

settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]" *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) (quotation omitted); *see also Wal-Mart*, 396 F.3d at 116. That is exactly the situation here. Class Counsel and Defendants' counsel (Goodwin Procter, LLP) are knowledgeable and experienced in complex class actions such as this, in addition to well-respected members of the ERISA class action bar. *See First Specht Decl. ¶ 23-26 & Ex. B.* At all times, the negotiations were conducted at arm's length. *Id. ¶ 15.* Accordingly, this factor also favors settlement approval.

"[T]he stage of the proceedings and the amount of discovery completed" are also pertinent to the Court's review. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016) (quotation omitted). While this case settled early in the discovery period, the following actions had already occurred: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiffs' claims prior to commencing the action, *First Specht Decl. ¶ 13*; (2) the parties' factual and legal contentions were staked out in connection with the original motion to dismiss, the Amended Complaint, and the renewed motion to dismiss, *id. ¶ 14*; (3) Defendants produced several categories of important Plan documents prior to settlement negotiations, *id. ¶ 15*; and (4) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions and the early discovery that was produced, *id. ¶¶ 19-21*. These circumstances further favor approval of the Settlement. *See Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement.").[7]

---

[7] Although this case was settled early, Class Counsel are no strangers to lengthy ERISA litigation. As noted above, Class Counsel have recently taken three ERISA class cases to trial, and litigated the *Deutsche Bank* ERISA action in

**C.    The Settlement Provides Significant Relief to the Class.**

The third factor under Rule 23 is whether "the relief provided for the class is adequate" in light of "the costs, risks, and delay" of further litigation and other relevant considerations.[8] The parties' negotiations resulted in a Settlement that provides substantial relief to the Class. The negotiated monetary relief represents a significant portion of the alleged losses sustained by the Plan. At the time of the settlement, Plaintiffs' damages models estimated that the total losses were approximately $10.3 million. *First Specht Decl. ¶ 4.* Based on this estimate, the $2.75 million recovery represents approximately 26% of the total estimated losses. *Id.* This compares favorably with numerous other ERISA class action settlements that have been approved across the country.[9] And, as the Independent Fiduciary noted in its Report, the recovery provided by the Settlement is "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Specht Decl., Ex. 1 at 1.*

The Settlement also provides for meaningful prospective relief. As noted above, Defendants will (1) ensure that, for the next three years, at least half of the Plan's investment funds are unaffiliated with Defendants; and (2) retain the Plan's current NAV investment platform for the next three years (unless they determine that using that platform is no longer consistent with

---

this District to the very eve of trial before it was settled. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 321 at 5 (S.D.N.Y. Aug. 14, 2018) *("Moreno II")* ("[T]he parties reached a settlement-in-principle on July 8, 2018 immediately preceding the scheduled start date of trial." (internal parentheses omitted)).

[8] Other relevant considerations include (1) the terms of any award of attorneys' fees, (2) any related agreement, and (3) the effectiveness of any proposed distribution method. The first consideration has been addressed in connection with Plaintiffs' Motion for Attorneys' Fees, *see ECF No.67*, and with respect to the second consideration, there are no agreements relating to the Settlement other than the fee agreement that Class Counsel already has reported in connection with that motion, *id.* at n.10. The third criteria is discussed below.

[9] *See, e.g.*, *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, ECF No. 95 at 10 (D. Mass. Mar. 24, 2021), *approved* ECF No. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, ECF No. 32 at 12 (D. Mass. May 6, 2019), *approved* ECF No. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858, at *4 (C.D. Cal. July 30, 2018) ("*Urakhchin III*") (approximately 17.7% of losses under plaintiffs' highest model); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under plaintiffs' highest model).

ERISA). *Settlement ¶ 6.1.* This relief addresses the core issue that Plaintiffs raised in the lawsuit and is designed to ensure that the Plan's expenses are reasonable going forward. This further supports approval of the Settlement. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 348 at 4-5 (S.D.N.Y. Mar. 7, 2019) ("*Moreno IV*") (finding that "non-monetary benefits" intended to address the core issues that gave rise to the lawsuit "have significant value for Plan participants"); *accord Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (finding that settlement was "fair, reasonable, and adequate" where it provided for "meaningful injunctive relief").

Moreover, each of the adequacy factors enumerated in Rule 23(e)(2)(C) support approval of the Settlement. These factors include:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors are briefly discussed below.

### 1.   Continued Litigation Would Have Entailed Significant Costs and Risks.

In the absence of a settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). While Plaintiffs are confident that they would have prevailed on the pending motion to dismiss, there was a risk that the Court might have dismissed the claims, either

now on the pleadings or later on a motion for summary judgment. And, if the case proceeded to trial, Defendants still might have prevailed.[10] Finally, even if Plaintiffs prevailed on liability, issues regarding proof of loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of losses in breach of fiduciary duty cases is "difficult"); *Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes— including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").

None of this is to say that Plaintiffs lacked confidence in their claims. But continuing the litigation would have resulted in complex and costly proceedings, and it would have delayed any relief to the Class, even if Plaintiffs ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("*Krueger II*"). In fact, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 954–56 (8th Cir. 2017) ("*Tussey II*") (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly complex"). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5

---

[10] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd in part, rev'd in part,* 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

(M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

### 2.  The Proposed Method of Distributing Relief to the Class is Effective.

The proposed method for distributing the Settlement proceeds is fair and reasonable. Participant Class Members will have their Plan accounts automatically credited with their share of the Settlement, and Former Participant Class Members will automatically receive their distribution via check unless they elect a tax-qualified rollover of their distribution to an individual retirement account or other eligible employer plan. *See Settlement ¶¶ 5.4-5.5.* This method of distribution is both effective and efficient. No monies will revert to Defendants, and any uncashed checks will be transferred to the Plan's forfeiture account and treated as a forfeiture under the Plan's terms, except that no such funds will be used to reduce any Employer contribution. *See id. ¶ 5.8 (b).* In authorizing the Settlement, the Independent Fiduciary "[r]eviewed the plan of allocation proposed by the parties," and did not note any concerns. *Third Specht Decl., Ex. 1 at 2.* And no Class Members have objected to the Plan of Allocation. *See Third Specht Decl. ¶ 6.*

### 3.  The Settlement Imposes a Reasonable Limitation on Attorneys' Fees.

The Settlement terms relating to attorneys' fees are also fair and reasonable. The Settlement does not provide for the award of a specific amount of attorneys' fees and is not conditioned on the award of *any* such fees, which will be reserved to the Court in its discretion upon application by Class Counsel. *See Settlement ¶ 7.1.* Moreover, with respect to the timing of payment, any attorneys' fees will be paid at the same time that funds to the class are distributed. *See id. ¶ 4.8.*

### 4.  No Separate Agreements Bear on the Adequacy of Relief to the Class.

As the Settlement states, "[t]his Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or

inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto." *Id.¶ 12.5.* Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### D.    The Settlement Treats Class Members Equitably.

Finally, the Settlement also treats Class Members equitably. The same allocation formula is used to calculate settlement payments for all eligible Class Members (both Participant Class Members and Former Participant Class Member). *See Settlement* ¶ 5.3. Moreover, that allocation formula is carefully tailored to the claims that were asserted in the case. *First Specht Decl. ¶ 4-10.* This further supports approval of the Settlement.

### E.    The Independent Fiduciary and All Class Members Support the Settlement.

The positive response from the Independent Fiduciary and the Class also support approval. Based on its review, the Independent Fiduciary affirmed that the Settlement terms and the amount of attorneys' fees and other amounts paid from the recovery were reasonable and the scope of the release is reasonable and consistent with other ERISA settlements. *See supra* at 6-7. Thus, the Independent Fiduciary concluded "that the Plan should not object to the Settlement or any portion thereof, including but not limited to the requested attorneys' fees and costs, and as such authorizes the Plan's participation in the Settlement." *See Third Specht Decl., Ex. 1 at 3.* The Independent Fiduciary also reviewed the scope of the release and the proposed Plan of Allocation and noted no concerns. *Id.* at 2. And the Settlement received unanimous approval from the Settlement Class, as no class members objected to the Settlement. *See Third Specht Decl. ¶ 6*; *Wal-Mart Stores*, 396 F.3d at 118 ("the absence of substantial opposition is indicative of class approval").

### III.    THE CLASS NOTICE PROGRAM WAS REASONABLE AND EFFECTIVE.

The class notice program in this case was also reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes individual

notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is the type of notice that was provided here.

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement."); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015) ("Here, the robust Notice Program, which included mailing individual Notices to the last known address of all Class members, more than meets the requirements of due process, Rule 23, and the notice standards articulated by the Second Circuit."). The record reflects that 99.11% of Settlement Notices were successfully delivered, *Bridley Decl. ¶ 9*, which highlights the notice program's effectiveness, *see, e.g.*, *In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018) (finding notice reasonable where 95% of packets were delivered, noting "[t]he relevant question is not whether some individual shareholders got adequate notice, but rather whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised." (quotations omitted)).

The Notices' content also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event that one was required); (6) instructions as to how to object to the Settlement and a date by which Class Members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9)

information regarding Class Counsel and the amount that Class Counsel would seek in attorneys' fees. *See Bridley Decl. Exs. B & C*. This was more than sufficient to "apprise the prospective members of the class of the terms of the proposed settlement and of the options . . . open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally"). Notably, no Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

Finally, the notice requirements of the Class Action Fairness Act have also been fully satisfied. *See* 28 U.S.C. § 1715(b) (setting forth notice requirements); *Bridley Decl. ¶ 4*.

## IV.    THE COURT SHOULD REAFFIRM CERTIFICATION OF THE SETTLEMENT CLASS.

In its Order for Preliminary Approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants in and beneficiaries of the Mutual of America Life Insurance Company Savings Plan at any time on or after September 14, 2016, through June 6, 2023, excluding any persons with responsibility for the Plan's administrative functions or investments.

*ECF No. 63 ¶ 3*. In support of preliminary approval, Plaintiffs previously established that: (1) the class is numerous; (2) common issues pertain to all Class Members; (3) Plaintiffs' claims are typical of other Class Members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other Class Members' interests. *ECF No. 56 at 18-23*. Nothing has changed since the Court

preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the class.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order.

Dated: September 20, 2023                    Respectfully Submitted,

**NICHOLS KASTER, PLLP**

By: s/ Brock J. Specht
Paul J. Lukas, NY Bar No. 4522207
Brock J. Specht, MN Bar No. 0388343*
Grace I. Chanin, MN Bar No. 0399969*
 *admitted *pro hac vice*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
bspecht@nka.com
gchanin@nka.com

ATTORNEYS FOR PLAINTIFFS